## BLANCHARD *v.* DIXON.

The provisions of sec. 32 of the stat. of 7 June, 1806, relative to the police of slaves, must be strictly construed, and the authority it confers upon a *freeholder* cannot be extended to any other person, and where one not a freeholder, in attempting to exercise the authority conferred by that section, shoots and injures a slave, he will be responsible to his master in damages for any permanent diminution of the value of the slave, for the loss of his labor, and the expense of surgical treatment.

APPEAL from the District Court of West Baton Rouge, *Penn*, J. *Bennett,* for the appellant. *Lacey*, for the defendant. The judgment of the court was pronounced by

KING, J. This is an action instituted to recover damages for injuries done to a slave of the plaintiff, who was shot by the defendant, as it is alleged, without provocation. The cause was tried by a jury, who returned a verdict for the defendant, and the plaintiff has appealed.

The facts are uncontradicted, and are derived principally from a statement of the circumstances connected with the occurrence, made by the defendant himself. They are as follows: The defendant is the overseer of *Nolan Stewart.* On sunday, the 21st of March, 1847, he met the slave in question in the high road, opposite to *Stewart's* plantation, which is in sight of the plaintiff's residence, and asked him if he had a pass. The answer of the slave was in french, and was not understood by the defendant, but the latter, judging from the tone of the slave, conceived it to be disrespectful. The slave was ordered to stop; but instead of submitting, he fled and passed into the field of *Stewart.* The defendant returned into his house, armed himself with a rifle, mounted a horse, pursued and shot the slave, who was in *Stewart's* field, at a distance of about six acres, fracturing his knee. Witnesses who have known the slave for several years, state that he is of good character, quiet, and submissive in his disposition.

The defendant contends, that the slave having been found absent from the plantation of his owner, without a written permission, and unaccompanied by a white person, and having refused to submit himself to examination, and attempted to escape, he was justified in shooting him; and relies upon sections 30 and 32 of the act of the 7th June, 1806. B. & C's. Dig. pp. 53, 54.

The first section relied on provides that, persons residing in the country shall not allow slaves under their control to go out of the plantation to which they belong, without a written permission; and if a slave be found beyond the limits of the plantation to which he belongs without such written permission, and unaccompanied by a white person, he shall be punished in the manner directed by the act, and sent back to his master. The 32d section of the act is in the following words:

" If any slave shall be found absent from the house or dwelling, or where his usual place of working or residence is, without some white person accompanying him, and shall refuse to submit himself to the examination of any freeholder, the said freeholder shall be permitted to seize and correct the said slave, as aforesaid ; and if the said slave should resist, or attempt to make his escape, the said inhabitant is hereby authorized to make use of arms, but at all events, to avoid the killing of said slave ; but should the said slave assault and strike the said inhabitant, he is lawfully authorized to kill him."

We deem it unnecessary to enquire whether a *freeholder,* under the circumstances of this case, would have been justified in resorting to the violent means used by the defendant to arrest a slave, in the day time, on the highway, on a day of rest, suspected of no crime, who is guilty of no assault, and who merely endeavors, by flight, to escape from an examination—more particularly in the absence of proof that he could not have been overtaken by further pursuit, or that the arrest could not have been otherwise safely effected.   See *Allain* v. *Young,* 9 Mart. 221.

The provisions of the sections under consideration are departures from the general law, and must be strictly construed.   In the absence of this express legislation, no citizen could legally assume to interfere with the property of his neighbor in the manner authorized by the statute.   The extraordinary powers which it confers in relation to slaves have been confided to a certain specified class of citizens, to whose prudence and discretion the legislature supposed they could be safely entrusted.   Freeholders alone are authorized by the law invoked, to seize and correct slaves who are found absent from their homes without a written permission, and unaccompanied by a white person, and to use arms in the event of resistence, or of an attempt to escape.   This authority cannot be extended beyond the express terms of the statute.

The defendant could only have availed himself of the protection of the statute on which he relies, by bringing himself within its provisions, and showing himself to be a freeholder.   This he has neither alleged nor proved ; and, under the evidence, we think that he is answerable for the damages which the plaintiff has sustained.

Having the testimony before us in relation to the extent of the injury caused to the plaintiff, we will not remand the cause, but put an end to the litigation by rendering a final decree.

The slave was confined for a year with the wound.   His knee has become stiff.   At the date of the trial he walked with difficulty, and was compelled to use a crutch.   The physician says that he may be able, in a year or two, to walk without the aid of a crutch; that the injury is permanent, but that with time, the use of the limb will be measurably restored.

The witnesses all concur in stating that the slave was worth $1,000 at the date of the injury, and that his value has been lessened by at least two thirds, in consequence of the wound.   The plaintiff has also been subjected to a charge of $50 for medical services.   Under the evidence, we think that $700 is a fair estimate of the damages.

The judgment of the District Court is, therefore, reversed ; and it is decreed that the plaintiff recover of the defendant $700 as damages, with interest from the date of this decree, and that the defendant pay the costs of both courts.